1    WO

5          IN THE UNITED STATES DISTRICT COURT

6              FOR THE DISTRICT OF ARIZONA

8    Marion A. McNeal,                    No. CV 16-00760-TUC-BPV

9                    Plaintiff,           **ORDER**

10   v.

11   Nancy A. Berryhill, Acting Commissioner
     of Social Security,

12                   Defendant.

13

         Plaintiff Marion A. McNeal has filed the instant action pursuant to 42 U.S.C. §
405(g) seeking review of the final decision of the Commissioner of Social Security.
(Doc. 1). The Magistrate Judge has jurisdiction over this matter pursuant to the parties'
consent. (Doc. 8). *See* 28 U.S.C. § 636(c). Pending before the Court are Plaintiff's
Opening Brief (Doc. 12), Defendant's Brief (Doc. 13), and Plaintiff's Reply Brief (Doc.
15). For the following reasons, the Court remands this matter for further proceedings.

**I.     Procedural History**

         In May, 2013, Plaintiff protectively filed an application for disability insurance
benefits, alleging that she had been disabled since February 24, 2013 because of "[b]rain
surgery due to an aneurysm" and hypertension. (Transcript/Administrative Record
("Tr.") at 148, 165, 169). Plaintiff's application was denied initially and upon
reconsideration. (Tr. 92-99). Upon Plaintiff's request for a hearing, Administrative Law
Judge ("ALJ") Yasmin Elias held a hearing on September 30, 2015, where Plaintiff who
was represented by counsel, and vocational expert ("VE") Lynda Berkley testified. (Tr.
37-62, 100). On January 18, 2016, the ALJ issued her decision denying Plaintiff's

request for benefits. (Tr. at 22-32). Thereafter, the Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review. Plaintiff then initiated the instant action.

## II. Plaintiff's Background

Plaintiff was born on August 13, 1954 and was 58 years of age on her alleged onset date. (Tr. at 148, 42). Plaintiff completed high school and two years of college. (Tr. at 50). Plaintiff worked in quality control for a defense contractor from 1995 through 2010. (Tr. at 50, 179). Prior to that, she worked as a warehouse I.D. specialist from March 1982 to May 1995. (Tr. at 179). Plaintiff stopped working in 2010 because she retired due to years of service and not because of any medical condition. (Tr. at 169, 325).

In February 2013, Plaintiff was found to have an aneurysmal subarachnoid hemorrhage. (Tr. at 260, 276-77, 411). Her symptoms were severe headaches, nausea, and vomiting. (Tr. at 264, 276). On March 8, 2013, neurosurgeon Joseph M. Zambraski, M.D., performed a right orbital zygomatic clipping of the aneurysm. (Tr. at 411, 415).

Plaintiff asserts that she has been unable to work since February 24, 2013 due to lack of concentration because she cannot "stay[] focused on one thing too long. I just do a little of this and maybe a little of that. I can't do no one job and finish it out yet." (Tr. at 46). She is unable to comprehend things she reads or follow conversations. (Tr. 52-53). She is forgetful and gets lost easily. (Tr. at 53). Plaintiff also experiences frequent mood changes and becomes overwhelmed "when I get so much thrown at me . . . ." (Tr. at 55). Plaintiff tires easily. (Tr. at 176). She also becomes dizzy if she turns her head too quickly. (Tr. at 176). Additionally, due to a car accident prior to the hearing, Plaintiff has difficulty sitting for long periods and experiences pain in her lower pelvic area when walking. (Tr. at 48).

## III. The ALJ's Decision

### A. Claim Evaluation

Whether a claimant is disabled is determined pursuant to a five-step sequential

process. *See* 20 C.F.R. § 404.1520. To establish disability, the claimant must show that: (1) she has not performed substantial gainful activity since the alleged disability onset date ("Step One"); (2) she has a severe impairment(s) ("Step Two"); and (3) her impairment(s) meets or equals the listed impairment(s) ("Step Three"). *Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2016). If the claimant satisfies Steps One through Three, then she is disabled and entitled to benefits. *Id.* If the claimant has a severe impairment that does not meet or equal the severity of one of the ailments listed, the ALJ then proceeds to Step Four, which requires the ALJ to determine the claimant's residual functioning capacity (RFC).[1] *Id.* After developing the RFC, the ALJ must determine whether the claimant can perform past relevant work. *Id.* If the claimant cannot perform past relevant work, then the analysis proceeds to Step Five where the government has the burden of showing that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. *Id.*

### B. The ALJ's Findings in Pertinent Part

The ALJ determined that Plaintiff "has the following severe impairments: benign brain neoplasm and organic brain disorder[.]" (Tr. at 24). The ALJ found that Plaintiff had the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) except claimant could never climb ladders, ropes or scaffolds. Claimant should avoid moderate exposure to workplace hazards such as moving machinery and unprotected heights. Claimant could perform simple routine and repetitive tasks in a slow-paced and stable work environment.

(Tr. 26). Based upon the vocational expert's testimony at the hearing, the ALJ determined that Plaintiff was unable to perform her past work as a quality-control assembly technician. (Tr. 30). The ALJ further relied on the VE's testimony to determine that Plaintiff would be able to perform other work such as: janitor, *Dictionary of Occupational Titles* ("*DOT*") No. 381.687-018; laundry worker; *DOT* No. 361.685-

---

[1] "The RFC is defined as 'the most' the claimant can do, despite any limitations." *Dominguez*, 808 F.3d at 405.

018; and housekeeper, *DOT* No. 323.687-010[2]. (Tr. 31). Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act from February 24, 2013 through the date of the ALJ's decision. (*Id.*).

**IV.   Discussion**

Plaintiff argues that the ALJ failed to comply with Social Security Ruling[3] ("SSR") 00-4P with regard to vocational expert testimony, and that the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Plaintiff's treating physician. Defendant requests affirmance of the ALJ's decision.

**A.   Standard**

The Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). The factual findings of the Commissioner shall be conclusive so long as they are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). This Court may "set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).

Substantial evidence is "'more than a mere scintilla[,] but not necessarily a preponderance.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)); *see also Tackett*, 180 F.3d at 1098. Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the

---

[2] The housekeeping job is identified in the *DOT* as Cleaner, Hospital. (Doc. 12, Exh. A at 2). An alternate title for the job is Housekeeper, Hospital. (*Id.*).

[3] The Commissioner issues SSRs to clarify the Act's regulations and the agency's policies. *Holohan v. Massanari*, 246 F.3d 1195, 1203 n. 1 (9th Cir. 2001). Although SSRs are binding on the Social Security Administration, they do not have the force of law. *Id.* "However, because they represent the Commissioner's interpretation of the agency's regulations, . . ." they are given "some deference." *Id.* (citation omitted). The court will not defer to the SSRs if they are inconsistent with the statute or regulations. *Id.*

evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett*, 180 F.3d at 1098 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). Moreover, the Commissioner, not the court, is charged with the duty to weigh the evidence, resolve material conflicts in the evidence and determine the case accordingly. *Matney,* 981 F.2d at 1019. However, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett,* 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir.1998)). Rather, the court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence. *Id.; Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The court shall "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

**B.     The ALJ's reliance on vocational expert testimony**

Plaintiff contends that the ALJ's decision as Step Five, which rests on the three *DOT* occupations cited by the VE is not supported by substantial evidence in the record According to Plaintiff, the VE's testimony conflicted with the *DOT*. In cases where the VE's testimony conflicts with the DOT, the ALJ is required by SSR 00-4P to obtain a reasonable explanation from the VE for those conflicts. Plaintiff asserts that the instant ALJ failed to comply with SSR 00-4P.

If the VE's "opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary* [*of Occupational Titles*], then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled." *Gutierrez v. Colvin*, 844 F.3d 804, 807 (9th Cir. 2016) (citing SSR 00-4P, 2000 WL 1898704, at *2 (2000)); *see also Zavalin v. Colvin,* 778 F.3d 842, 846 (9th Cir. 2015) ("the ALJ is required to reconcile the inconsistency."). "The ALJ's failure to resolve an apparent inconsistency may leave . . . [the court] with a gap in the record that precludes . . . [the court] from determining whether the ALJ's decision is

supported by substantial evidence." *Zavalin,* 778 F.3d at 846 (remanding for further proceedings where ALJ failed to reconcile apparent conflict, leaving the court with a "mixed record" from which it could not determine whether substantial evidence supported the ALJ's step-five finding that claimant could work). The Ninth Circuit has noted that "tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about." *Gutierrez,* 844 F.3d at 808. Thus, "[t]he requirement for an ALJ to ask follow up questions is fact-dependent." *Id.*

Here, the ALJ asked the VE to identify any conflict between her testimony and the *DOT.* (Tr. at 56). The VE did not identify any such conflict during her testimony (Tr. at 56-61), although she did explain that "pace" was not discussed in the *DOT* and that her testimony concerning that issue "is based on my professional experience having done job analyses on these jobs and observed how they're performed. And then in addition, the essence of the type of work and the duties as described in the DOT." (Tr. at 59). The ALJ found, "[p]ursuant to SSR 00-4[P], . . . that the vocational expert's testimony is consistent with the information contained in the *Dictionary of Occupational Titles*." (Tr. ag 31 (italics added)).

### 1. Climbing

The ALJ determined that Plaintiff could never climb ladders, ropes or scaffolds. (Tr. at 26). "Climbing" for purposes of the *DOT* includes ascending and descending a ladder, in addition to stairs, scaffolding, ramps, poles, and ropes. (Doc. 12 at 10 (citing *Program Operations Manual System¸* § DI 25001.001(B)(9)). Plaintiff points out that the occupations of janitor and housekeeper require occasional climbing. (Doc. 12 at 10). "'Occasionally' means occurring from very little up to one third of the time." SSR 83-10, 1983 WL 31251, at *5. The ALJ did not obtain any explanation from the VE for the conflict between her testimony and the *DOT* with respect to the climbing demands of a janitor and a housekeeper. (Tr at 56-61). Plaintiff submitted to the Appeals Council a report from vocational expert Tracy Young confirming that the janitor (*DOT* No. 381.687-018) and hospital cleaner (*DOT* No. 323.687-010) jobs require climbing

ladders.[4]  (Tr. at 221).

Defendant contends that Plaintiff's concern is ameliorated by the VE's focus on "specific categories of jobs within the janitor and housekeeper positions—specifically, a night janitor and hospital housekeeper."  (Doc. 13 at 13 (citing Tr. at 57-58)).  However, the VE's purpose for focusing on these specific positions was that they afforded "flexibility in pace . . . ."  (Tr. at 59; *See also* Tr. at 58 (night janitors "can go at the pace that's required, as long as they clean all the rooms"); Tr. at 59 (with hospital cleaners "there's no pace from the standpoint of somebody's waiting for you to get what you're [sic] done.")).  Although Defendant cites the VE's testimony that a worker in these positions would clean offices at night, clean halls and buff floors to support the position that "[t]hese jobs might require climbing ramps or stairs, but would not require climbing ladders . . .", (Doc. 13 at 13), Defendant omits the VE's testimony that the worker would be required to do "whatever's expected."  (Tr. at 58).  It is reasonable to conclude that climbing a ladder would likely be an expected part of both jobs and Ms. Young has opined as much.  Significantly, the *DOT* job description for hospital cleaner includes that such a worker, in addition to cleaning patient rooms, baths, offices, laboratories, halls, and offices:  "Keeps utility and storage rooms in clean and orderly condition. . . . Replaces soiled drapes and cubical curtains."  (Doc. 12, Exh. A at 2).  Likewise, the job of janitor[5] can include cleaning lint, dust, oil and grease from overhead pipes in addition to other areas.  (*Id.* at 10).  Because the record reflects an apparent conflict between the *DOT* and the VE's testimony and there is no explanation in the record to resolve this conflict in favor of the VE's position, the ALJ's reliance on the VE's testimony that Plaintiff could work as a janitor or hospital cleaner is not supported by substantial

---

[4] For example, Ms. Young opined that the job of hospital cleaner was "eliminated because of the potential need to climb ladders to dust and clean areas that are near the ceiling such as curtain frames, windows, and equipment and perform tasks such as replacing cubical curtains."  (Tr. at 221).

[5]Although the VE's testimony suggested that the janitorial job would involve night cleaning at office buildings (Tr. at 58), an alternate title for the occupation is Cleaner, Industrial. It is difficult to reconcile a night janitor job at an office building with a plain reading of the *DOT*.

evidence.

2.        **Laundry Worker II (*DOT* No. 361.685-018)**

The ALJ's hypothetical question to the VE included that Plaintiff required "[w]ork that would avoid even moderate exposure to workplace hazards, such as moving machinery and unprotect[ed] heights." (Tr. at 56; *see also* Tr. at 26 (ALJ's RFC assessment stating that Plaintiff "should avoid moderate exposure to workplace hazards such as moving machinery and unprotected heights.")). Plaintiff argues that the job of Laundry Worker II, which the VE identified, "requires exposure to a workplace hazard in the form of a moving machine: a wringer." (Doc. 12 at 11). Plaintiff also submitted to the Appeals Council vocational expert Young's statement that a laundry worker "might be exposed to . . . machinery such as a laundry mangle."[6] (Tr. at 221).

The Commissioner "may rely on the general job categories of the [*DOT*], with its supplementary *Selected Characteristics* ["SCO"], as presumptively applicable to a claimant's prior work." *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986) (citations omitted); *see also* 20 C.F.R. § 404.1566(d). Although the *DOT* raises a presumption as to the job classification, it is rebuttable. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). Thus, expert testimony which contradicts the *DOT* may be relied upon, "but only insofar as the record contains persuasive evidence to support the deviation." *Id.*

SSR 96-9P states that: "'hazards' defined in the SCO are considered unusual in unskilled sedentary work. They include: moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals." SSR 96-9P, 1996 WL 374185, at *9. Defendant points out that the *DOT* job description of Laundry Worker II indicates there is no exposure to moving mechanical parts. (*See* Doc. 13 at 13; Doc. 12, Exh. A at 9 ("Moving Mech. Parts: Not Present – Activity or condition does not exist")). Nonetheless, the *DOT* job description indicates that wringers are utilized in the

---

[6] A "mangle" is defined as: "A machine for squeezing water from and pressing linen, clothing, etc., after washing." *Oxford English Dictionary* (3d ed. 2000).

position. The ALJ assessed limitations with regard to exposure to "hazards such as moving machinery", not moving mechanical parts. Machinery such as an industrial or commercial wringer may well pose a hazard in the absence of moving mechanical parts. This issue was not clarified by either the ALJ or VE and, in turn, the possibility of erosion of the job base was never discussed. *Cf. Murphy v. Astrue,* 2011 WL 124723, *6 (C.D. Cal. Jan. 13, 2011) (ALJ erred in failing to obtain an explanation of the VE's variance from the DOT where that the RFC limitation was to "hazardous machinery", not moving mechanical parts, and machinery used in small products assembler job "may be hazardous in the absence of moving parts."). Defendant's reliance on the fact that the VE did not specifically mention wringers when she described the type of work performed in the job (Doc. 13 at 14 (citing Tr. at 58)), makes no difference given that the VE never stated that her testimony departed from the *DOT* and the *DOT* specifically mentions wringers.

### 3. Conclusion

The Commissioner bears the burden at Step Five to establish that work exists in the national economy that Plaintiff can perform. Because the record does not address the conflicts between the VE's testimony and the DOT for each of the three positions identified that Plaintiff can perform, the Court "'cannot determine whether substantial evidence supports the ALJ's step-five finding that [Plaintiff] could perform [the] work[]'" identified by the VE. *Zavalin,* 778 F.3d at 848 (quoting *Massachi v. Astrue,* 486 F.3d 1149, 1154 (9th Cir. 2007). Accordingly, "the ALJ's failure to reconcile the apparent conflict is not harmless." *Id.*

### C. Treating Doctor's Opinion Regarding Mental Impairments

#### 1. Standard

Medical opinions and conclusions of treating doctors are typically accorded special weight because treating doctors are in a unique position to know claimants as individuals, and because the continuity of their dealings with claimants enhances their ability to assess the claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421-22

(9th Cir. 1988); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("A treating physician's opinion is entitled to substantial weight.") (internal quotation marks and citation omitted); *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir. 1987); 20 C.F.R. §§ 404.1527.

A treating physician's medical opinion "is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence [in the claimant's] case record.'" *Trevizo v. Berryhill,* 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. §404.1527(c)(2)); *see also Orn v. Astrue,* 495 F.3d 625, 631 (9th Cir. 2007) (same)). When the treating doctor's opinion is not given controlling weight, "it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo,* 871 F.3d at 675 (citing 20 C.F.R. § 404.1527(c)(2)-(6)); *see also* SSR 96-2P, 1996 WL 374188, *4[7] ("Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927."). Even if the treating physician's opinion does not meet the test for controlling weight, the treating physician's opinion may still be entitled to the greatest weight and should be adopted. *Orn*, 495 F.3d at 631.

"[I]f the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by

---

[7] In light of new rules effective March 27, 2017, the Commissioner rescinded SSR 96-2P. *See* Notice regarding Rescission of Social Security Rulings 96-2P, 96-5P, and 06-3P, 2017 WL 3928298 (March 27, 2017). However, SSR 96-2P applied at the time of ALJ's decision and discusses the regulations governing claims, like Plaintiff's, that were filed before March 27, 2017.

substantial evidence in the record." *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998) (citing *Lester v. Chater,* 81 F.3d 821, 725 (9th Cir. 1995)). Additionally, "like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31.

## 2. Pertinent Opinions

On August 10, 2015, Victoria Murrain, D.O., who has treated Plaintiff since May 2013, opined in pertinent part that:

> During [Plaintiff's hospital stay to treat her aneurysm], she was started on antihypertensive medication in addition to her antilipemic medications. The combination of her medical diagnoses and medications have rendered her unable to work. She suffers from emotional lability, fatigue, difficulty focusing, memory impairment. Because of these symptoms, I have advised her not to work on a full-time basis.

(Tr. at 410).

The record also reflects that on April 21, 2014, Plaintiff presented to Gwendolyn Johnson, Ph.D., for psychological evaluation. (Tr. at 324-28). Plaintiff "described a history of depression that dates back one year ago after surgery for a ruptured aneurysm. She reported tearfulness, sleep disturbance, decreased concentration, and sadness around losses (forgetfulness, 'being too slow') that she associates with the surgery." (Tr. at 325).

Dr. Johnson found that Plaintiff's "immediate, short-term memory and remote memory systems were grossly intact (3/3 words recalled immediately; 1/3 recalled after ten minutes)." (Tr. at 326). Testing reflected that Plaintiff's concentration was fair. (*Id.*). On the WAIS-IV, Plaintiff earned a full-scale IQ score of 66 and, relative to others of comparable age, Plaintiff's "performance suggests intellectual functioning that is within the extremely low range." (*Id.*) Plaintiff's "score on Verbal Comprehension was in the low average range while scores on Perceptual Reasoning, Working Memory, and Processing Speed placed her in the extremely low range of functioning in these areas." (*Id.*).

Dr. Johnson diagnosed: cognitive disorder NOS; depressive disorder NOS;

subarachnoid hemorrhage; intracranial aneurysm; hypertension; hyperlipidemia; GERD; and "chronic health problems, unemployed." (*Id.*). Dr. Johnson opined that Plaintiff met the "criteria for a depressive disorder that has likely developed as a result of chronic health problems. Her performance on the WAIS-IV is suggestive of mild-moderate cognitive impairment. Based solely on her present levels of psychological and cognitive functioning, Ms. McNeals's prognosis for a successful return to the work force is estimated as fair." (Tr. at 327). Dr. Johnson went on to opine that: in the area of understanding and memory, Plaintiff "may be able to manage simple information and instructions"; in the area of sustained concentration and persistence, Plaintiff's "ability to concentrate may be mildly impaired. She may be able to manage non-complex, repetitive tasks[]"; in the area of social interaction, Plaintiff exhibited no evidence of impairment; and in the area of adaptation, Plaintiff "may be able to manage employment in a slow paced, stable work environment." (Tr. at 328).

In May 2014, non-examining State-agency psychologist "LML" opined that Plaintiff could: "perform simple and some complex tasks"; relate to others on a superficial work basis; and adapt to a work situation. (Tr. at 84).

### 3. Analysis

The ALJ determined that Plaintiff "could perform simple routine and repetitive tasks in a slow paced and stable work environment." (Tr. at 26). In arriving at this conclusion, the ALJ granted "significant weight" to examining Dr. Johnson's opinion, finding it to be consistent with Plaintiff's evaluative testing. (Tr. at 28). The ALJ also stated that Dr. Johnson's findings "support the simple information, instructions and noncomplex repetitive tasks limitation. They also support the slow-paced stable work environment limitation." (*Id.*).

The ALJ accorded "partial weight" to treating Dr. Murrain's opinion and the non-examining State-agency psychologist's opinion[8]. (Tr. 28-29). The ALJ gave "less

---

[8] The ALJ assigned "greater weight" to that portion of the non-examining psychologist's opinion regarding activities of daily living, social functioning, and maintaining concentration, persistence or pace "because it is consistent with the

weight" to Dr. Murrain's opinion to the extent that the Doctor "opined on a matter left to the Commissioner of Social Security, when she states claimant is unable to work." (Tr. at 28). The ALJ also stated that "Dr. Murrain did not provide documentary support of claimant's memory impairment and difficulty focusing. Thus, it appears Dr. Murrain based her opinion upon claimant's subjective complaints, rather than objective clinical findings. Therefore, this portion of Dr. Murrain's opinion is assigned less weight."[9] (*Id.*).

Plaintiff argues that the ALJ failed to state sufficient reasons to reject Dr. Murrain's opinion. Relying on *Hill v. Astrue,* 698 F.3d 1153 (9th Cir. 2012), Plaintiff asserts that the ALJ improperly rejected Dr. Murrain's opinion that Plaintiff could not perform sustained full-time work as an opinion on an issue reserved to the Commissioner. (Doc. 12 at 15).

A treating doctor's opinion "is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Thomas v. Barnhart,* 278 F.3d 947, 956 (9th Cir. 2002). *See also* 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); SSR 06-03p, 2006 WL 2263437, *3 (the "final responsibility for deciding certain issues, such as whether an individual is disabled under the Act, is reserved to the Commissioner."). Nonetheless, "an ALJ may not simply reject a treating physician's opinions on the ultimate issue of disability." *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014). Where "the treating physician's opinion on the issue of disability is controverted, the ALJ still must . . . provide 'specific and legitimate' reasons in order to reject the treating physician's opinion." *Holohan,* 246 F.3d at 1202-03.

This case is not like *Hill* despite Plaintiff's assertion to the contrary. In *Hill,* the

consultative examiner's findings, evaluative testing results and the undersigned has assigned significant weight to her opinion." (Tr. at 29).

[9] The ALJ assigned "some weight to Dr. Murrain's statement that claimant's blood pressure is under control with medication as this is consistent and supported by the medical record." (Tr. at 28).

ALJ failed to discuss an examining psychologist's opinion that the claimant's impairments made "the likelihood of sustained full time competitive employment unlikely." *Hill,* 698 F.3d at 1159. On appeal, the Commissioner argued that the ALJ's failure to consider the "opinion was harmless because an opinion that an individual cannot work is an opinion on an issue reserved to the Commissioner and, therefore, it is not binding." *Id.* at 1160. The Ninth Circuit disagreed, stating that the psychologist's statement was "not a conclusory statement like those described in 20 C.F.R. § 404.1527(d), but instead an assessment, based on objective medical evidence, of [the claimant's] likelihood of being able to sustain full time employment given the . . ." claimant's impairments and lack of insurance. *Id.* Therefore, the Ninth Circuit held that the ALJ's failure to discuss the psychologist's "opinion was not harmless error and [the psychologist's] opinion should have been considered. *See* 20 C.F.R. §404.1527(c) ('Regardless of its source, we will evaluate every medical opinion we receive.')." *Id.* Here, in contrast, the ALJ did not silently disregard Dr. Murrain's opinion, rather she went on to explain why the opinion was accorded less weight and, in doing so, provided specific and legitimate reasons to discount that opinion.

For example, the ALJ pointed out that "Dr. Murrain did not provide documentary support of claimant's memory impairment or difficulty focusing. Thus, it appears Dr. Murrain based her opinion upon claimant's subjective complaints, rather than objective clinical findings." (Tr. at 28). Elsewhere in the decision, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely credible. (Tr. at 27). Plaintiff has not challenged this finding. An ALJ may discount a doctor's opinion where the opinion is based to a large extent on a claimant's self-reports, and the ALJ has properly discounted a claimant's subjective symptoms. *Tommasetti,* 533 F.3d at 1041. *Cf. Ghanim,* 763 F.3d at 1162 ("when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."). Dr. Murrain's treatment notes do not reflect any observations or other indicators that would support her

opinion that Plaintiff is precluded from all work. Dr. Murrain began treating Plaintiff in May 2013. (Tr. 410). Dr. Murrain's treatment records consistently reflect that Plaintiff reported no mental status changes or aberrant behavior and that Plaintiff was coherent. All neurologic and "psych/mental" examinations were normal, other than noting gait instability at times. (*See* Tr. at 318-323, 330-65; *see also* Tr. at 349 (mentioning balance issues)) Dr. Murrain's assessments did not reflect that Plaintiff was experiencing psychiatric, psychological, or cognitive difficulty or any other difficulty in the areas mentioned in the Doctor's letter.[10] Plaintiff has not cited to any treatment records where Plaintiff complained to Dr. Murrain about, or Dr. Murrain noted observing, emotional lability, fatigue, difficulty focusing, and memory impairment, nor can the Court find any such reference.

The record does reflect that in August 2014, Plaintiff presented to neurosurgeon Travis Dumont, M.D., with complaints of headache and "confusion at times and . . . other cognitive deficits." (Tr. at 344). On exam, Dr. Dumont found Plaintiff was awake, alert and oriented and that her speech was clear and conversant. (*Id.*). He made no observations or other comment concerning Plaintiff's complaints of confusion or cognitive deficit. In September 2014, Dr. Dumont performed a cerebral angiogram to evaluate for any residual aneurysm, and found "[n]o residual aneurysm. PCOM infundibulum." (Tr. at 332, 335).

Plaintiff cites to examining Dr. Johnson's finding that Plaintiff's working memory "was in the 0.4 percentile" which Plaintiff interprets to mean that "99.6 percent of the population has a better [w]orking [m]emory than [Plaintiff]." (Doc. 12 at 16). Plaintiff also points out that the ALJ did not dispute the validity of Dr. Johnson's objective memory testing. (*Id.*).

Working memory has been defined as follows:

---

[10] In one instance in November 2014, Plaintiff presented to Dr. Murrain complaining of chills and "[g]eneralized malaise since last pm", and reported that she had been exposed to someone at church who was ill. (Tr. at 343) However, Plaintiff's "[p]syche" examination was normal. (Tr. at 339). Dr. Murrain's assessment included diabetes mellitus, benign essential hypertension, and urinary frequency. (Tr. at 340).

> Working memory: Short-term (recent) memory. Working memory is a
> system for temporarily storing and managing the information required to
> carry out complex cognitive tasks such as learning, reasoning, and
> comprehension. Working memory is involved in the selection, initiation,
> and termination of information-processing functions such as encoding,
> storing, and retrieving data.

https://www.medicinenet.com/script/main/art.asp?articlekey=7143 (last visited on Mar.

23, 2018). Short-term memory carries the same definition as working memory. *See*

*https://www.medicinenet.com/script/main/art.asp?articlekey=7142* (last visited on Mar.

23, 2018). In addition to finding that Plaintiff's score regarding working memory "placed

her in the extremely low range of functioning . . .", Dr. Johnson also found that Plaintiff's

"immediate, short term memory and remote memory systems were grossly intact (3/3

words recalled immediately; 1/3 recalled after ten minutes)." (Tr. at 326). Dr. Johnson's

ultimate determination was that Plaintiff "may be able to manage simple information and

instructions[,] . . . .non-complex, repetitive tasks[,] . . . [and] employment in a slow

paced, stable work environment." (*Id.*). Dr. Johnson also opined that Plaintiff's

prognosis for a successful return to the workforce was "fair." (Tr. at 327). Based upon

Dr. Johnson's report, the ALJ found that Plaintiff had the RFC to "perform simple routine

and repetitive tasks in a slow-paced and stable work environment." (Tr. at 26).

   While Dr. Johnson's examination certainly supports Dr. Murrain's statement that

Plaintiff has difficulty with memory, Dr. Johnson diverged from Dr. Murrain's opinion to

the extent that Dr. Johnson determined that Plaintiff may be able to perform non-

complex, repetitive tasks in a slow-paced and stable work environment. Nothing in Dr.

Murrain's records or letter, nor other medical evidence of record provide a basis to

support a conclusion that Plaintiff's limitations precluded her from performing all work.

*Tommasetti,* 533 F.3d at 1041 (ALJ provided specific and legitimate reasons for

rejecting treating physician's opinion of plaintiff's limitations where treating physician's

medical records did not provide support for those limitations); *Batson v. Commissioner of*

*Social Security Admin.,* 359 F.3d 1190, 1195 (9th Cir. 2004) ("an ALJ may discredit

treating physicians' opinions that are conclusory, brief, and unsupported by the record as

a whole, or by objective medical findings . . . ." (internal citation omitted)).

Although Plaintiff cites the general rule that more deference should be given to the opinion of a treating physician (Doc. 12 at 16), in light of Dr. Murrian's treatment records which fail to support her opinion that Plaintiff's condition precluded all work, the ALJ properly accorded Dr. Murrain's less weight. Moreover, even if the ALJ's statement that Dr. Murrain "opined on a matter left to the Commissioner of Social Security . . ." (Tr. at 28), could be viewed as erroneous, the ALJ discounted the opinion for other specific and legitimate reasons which renders any such error harmless.

## V. Remand for further proceedings

"A district court may 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing,' *Treichler v. Comm'r of Soc.[] Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)) (alteration in original), but 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation,' *id.* (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985))." *Dominguez,* 808 F.3d at 407. Remand for an award of benefits is appropriate only where the following three prerequisites are met:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison,* 759 F.3d at 1020 (footnote and citations omitted). In evaluating whether further administrative proceedings would be useful, the court "consider[s] whether the record as a whole is free from conflicts, ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's entitlement to benefits is clear under the applicable legal rules." *Treichler*, 775 F.3d at 1103-04.

"'[I]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded' for further proceedings." *Trevizo,*

871 F.3d at 682 (quoting *Garrison,* 759 F.3d at 1019); *see also Treichler,* 775 F.3d at 1101, n.5 (it is an abuse of discretion to remand "for an award of benefits when not all factual issues have been resolved.") (citation omitted). Moreover, even when all three factors of the test are met, the "district court retains the flexibility to 'remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" *Treichler,* 775 F.3d at 1102 (quoting *Garrison,* 759 F.3d at 1021).

As discussed above, the record requires further development at Step Five. *See e.g., Zavalin,* 778 F.3d at 848 (remanding for further proceedings where ALJ failed to reconcile conflicts between the VE testimony and the *DOT*). Accordingly, the Court remands this matter for further proceedings.

**VI. Conclusion**

For the foregoing reasons, this matter is remanded to the ALJ for further proceedings consistent with this Order. Accordingly,

IT IS ORDERED that the Commissioner's decision denying benefits is REVERSED.

IT IS FURTHER ORDERED that this matter is REMANDED to the Commissioner for further proceedings consistent with this Order.

The Clerk of Court is DIRECTED to enter Judgment accordingly and close its file in this matter.

Dated this 23rd day of March, 2018.

Bernardo P. Velasco
United States Magistrate Judge